1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    TRENTON LYDELL GABRIEL,                   Case No.  1:21-cv-00390-CDB

12              Plaintiff,                       ORDER REMANDING THIS MATTER FOR
                                                 FURTHER PROCEEDINGS UNDER
13         v.                                    SENTENCE FOUR OF 42 U.S.C. § 405(g)

14    COMMISSIONER OF SOCIAL                     (Docs. 18, 22)
      SECURITY,
15
                Defendant.
16

17

18         Trenton Lydell Gabriel ("Plaintiff") seeks judicial review of a final decision of the

19    Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

20    disability insurance benefits under the Social Security Act.  (Doc. No. 1).  The matter is currently

21    before the Court on the certified administrative record (Doc. 12) and the parties' briefs, which

22    were submitted without oral argument.  (Docs. 18, 22-23).[1]  Plaintiff asserts the Administrative

23    Law Judge ("ALJ") failed to include work-related limitations in the residual functional capacity

24    finding consistent with the nature and intensity of Plaintiff's limitations and failed to offer any

25    reason for discounting Plaintiff's symptomology testimony.  (Doc. 18 at 9-11).  Plaintiff requests

26    the decision of the Commissioner be vacated and the case be remanded for further proceedings

27
           [1]  Both parties have consented to the jurisdiction of a magistrate judge for all proceedings
28    in this action, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 11).

1  and proper evaluation of the evidence.  *Id*. at 11.

2  ### I.  BACKGROUND

3  **A. Administrative Proceedings**

4  On July 1, 2016, Plaintiff protectively applied for supplemental security income benefits

5  pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*., alleging a

6  period of disability beginning on April 8, 2015.  (Administrative Record ("AR") 20, 238-39 ).[2]

7  Plaintiff was 44 years old on the alleged disability onset date.  *Id*. at 238.  Plaintiff claimed

8  disability due to lower back compression, arthritis in both knees, hearing voices, seeing things,

9  poor memory, anxiety, and depression.  *Id*. at 268, 388.

10  The Commissioner denied Plaintiff's application initially and again on reconsideration.

11  *Id*. at 166-69, 175-80.  Plaintiff submitted a written request for a hearing by an ALJ.  *Id*. at 182-

12  84.  On April 11, 2019, Plaintiff, represented by counsel, appeared in person for a hearing held

13  before ALJ Shiva Bozarth.  *Id*. at 42-77.  Vocational expert ("VE") Gayle Tichauer also testified

14  at the hearing via telephone.  *Id*. at 44, 72-76.

15  **B. Medical Record**

16  The relevant medical record was reviewed by the Court and will be referenced below as

17  necessary to this Court's decision.

18  **C. Hearing Testimony**

19  Plaintiff testified he believed the last time he worked was in 2014.  (AR 50).  Plaintiff

20  expressed he was unsure about the date as he had memory issues stemming from a head injury.

21  *Id*.  Plaintiff reported he resided in a "permanent supported living" apartment with a roommate.

22  *Id*. at 51, 55.  Plaintiff stated his roommate "usually cooks, because he's a good cook" and his

23  roommate's care provider washed the dishes.  *Id*.  Plaintiff noted he would try to keep his room

24  clean but "[i]t's usually a mess."  *Id*. at 52.  Plaintiff testified he did laundry once a week but had

25  trouble due to pain in his hands, knees, and back.  *Id*. at 52-53.

26

27      [2] On November 21, 2011, Plaintiff applied for supplemental security income, alleging
disability beginning on October 3, 2008.  (AR 113).  On April 7, 2015, ALJ John Cusker issued a
28  decision finding Plaintiff was not disabled under §1614(a)(3)(A) of the Act.

1    Plaintiff testified he did his grocery shopping once a week but found it difficult to be

2  around people. *See id*. at 53 ("I have a nervous condition of being around people"). Plaintiff

3  noted he tries to go to the grocery store later in the evening when there are fewer people. *Id*. at

4  54. Plaintiff asserted that his aversion to people wouldn't prevent him from going to the store

5  "but it just would make things harder for me." *Id*. at 54.

6    Plaintiff stated he did not like leaving his apartment in the morning because he heard

7  "angry voices." *Id*. Plaintiff noted these voices occurred "on a daily basis" and he felt

8  "somebody is trying to hurt me." *Id*. at 54, 60-61. Plaintiff also alleged he experienced visual

9  hallucinations two to three times a week. *Id*. at 61-62. Plaintiff asserted he suffered from panic

10  attacks that last from 30 minutes to an hour and occurred every day. *Id*. at 62-64. Plaintiff

11  testified he suffered from depression. *Id*. at 63. Plaintiff claimed his depression gave him

12  feelings of hopelessness and unable/not wanting to do anything except sleep. *Id*. at 63.

13    Plaintiff testified Fresno Behavioral doctors determined he was unable to care for himself.

14  *Id*. at 55. Plaintiff noted he saw a psychologist once every other month and a therapist once a

15  week. *Id*. Plaintiff stated he used illegal drugs six months prior but was currently sober. *Id*. at

16  55-56. Plaintiff testified he requires assistance in taking his prescribed medicine. *Id*. at 56.

17  Plaintiff claimed he needed someone to remind him two or three times a week to take his

18  medicine. *Id*. at 59. Plaintiff testified every so often he took public transportation but found it

19  challenging because "I don't like to be around people." *Id*. at 70.

20    The ALJ proffered a hypnotical to the VE of an individual with the same age, education,

21  and work experience as the Plaintiff, who could lift or carry 20 pounds occasionally, 10 pounds

22  frequently, could stand, walk or sit for at least six out of eight hours, occasionally crouch, kneel,

23  or crawl. *Id*. at 73. Further, this proposed individual was limited to simple routine tasks, would

24  need 10-minute breaks every two hours, and would be able to have occasional contact with

25  supervisors and coworkers, but no more than incidental contact with the general public. *Id*.

26  The VE opined that this individual could perform jobs such as a housekeeping cleaner,

27  merchandise makers, and routing clerks. *Id*.

28

3

1          **D. The ALJ's Decision**

2          On July 17, 2019, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR

3   20-30).  The ALJ conducted the five-step disability analysis set forth in § 416.920(a).  *Id*. at 21.

4   The ALJ found Plaintiff had not engaged in substantial gainful activity since July 1, 2016, the

5   application date (step one). *Id*. at 23.  The ALJ held Plaintiff possessed the following severe

6   impairments: adjustment disorder, amphetamine dependence in remission, major depressive

7   disorder with psychotic features, chronic pain, mood disorder, unspecified schizoaffective

8   disorder, and post-concussion syndrome (step two).  *Id*.  The ALJ Plaintiff also noted Plaintiff

9   had mild anterior wedging at L1 and L2 of the lumbar spine, multilevel facet arthropathy,

10  gastritis, allergic rhinitis, hypertension, and hyperlipidemia.  *Id*.  However, the ALJ found these

11  impairments imposed at most a minimal functional limitation on Plaintiff's ability to work and

12  were therefore "not severe."  *Id*.

13         Next, the ALJ determined Plaintiff did not have an impairment or combination of

14  impairments that meets or medically equals the severity of one of the listed impairments in 20

15  C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  *Id*. at 23-24.  The ALJ then

16  assessed Plaintiff's residual functional capacity ("RFC").  *Id*. at 24.  The ALJ found that Plaintiff

17  retained the RFC:

18
           "to perform light work as defined in 20 CFR 416.967(b) except he can lift and carry 20
19         pounds occasionally and 10 pounds frequently; stand, walk, and sit at least six hours each
           in an eight-hour workday, and occasionally crouch, kneel or crawl.  The claimant can
20         perform simple routine tasks. He needs a 10 minute [*sic*] break every two hours, and he
           can tolerate occasional contact with supervisors and coworkers and no more than
21         incidental contact with the general public."

22

23  *Id*.  Although the ALJ recognized that Plaintiff's impairments could reasonably be expected to

24  cause his alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the

25  intensity, persistence and limiting effects of his symptoms were not entirely consistent with the

26  medical evidence and other evidence in the record.  *Id*. at 24-25.

27         Specifically, the ALJ noted that while Plaintiff claimed to suffer from "debilitating

28
                                                    4

1  physical issues," medical records showed Plaintiff sought only minimal treatment for physical

2  impairments.  Further, the ALJ pointed to Plaintiff's recurring physical activities of riding a

3  bicycle and being able to walk a mile.  Similarly, the ALJ acknowledged that Plaintiff expressed

4  "doing well" after spending 14 hours loading furniture onto a truck approximately nine months

5  prior to the hearing.  And the ALJ pointed out that there were "inconsistencies in the claimant's

6  alleged sobriety."  *Id*. at 25.  Specifically, the ALJ noted in June 2017, Plaintiff said he had not

7  used meth since 2013, but three months prior, he reported he had last used a few months prior.

8  *Id*.

9      The ALJ considered the reports of Fresno County Behavioral Health Services ("Fresno

10  Health").  *Id*. at 25-26.  The ALJ found the reports indicated Plaintiff's mental status exam in July

11  2017, was normal except for reports of hallucinations, impaired insight, and judgment.  *Id*. at 26.

12  The ALJ noted Plaintiff participated in counseling, learned coping skills, and expressed an

13  interest in working again and being in his daughter's life.  *Id*. at 26.

14      The ALJ considered the report of Ekram Michiel MD.  *Id*. at 27.  Dr. Michiel diagnosed

15  Plaintiff with a psychotic disorder not otherwise specified with a GAF of 55.  *Id*.  Dr. Michiel

16  opined Plaintiff was able to maintain attention and concentration to carry out simple job

17  instructions and relate and interact with coworkers, supervisors, and the general public while in

18  the routine setting of performing simple job instructions.  *Id.*  Dr. Michiel found Plaintiff was

19  unable to maintain attention and concentration to carry out an extensive variety of technical

20  and/or complex instructions.  *Id.*  Dr. Michiel indicated Plaintiff had no restrictions in his

21  activities of daily living and that he would be able to handle his funds if his history regarding his

22  drug use was reliable.  *Id.*  The ALJ found Dr. Michiel's report was "supported by and consistent

23  with the overall record" and that Plaintiff was able to care for his daily needs, shop, and interact

24  with family.  *Id*.

25      The ALJ considered the report of Samuel B. Rush, MD.  *Id*.  Dr. Rush diagnosed Plaintiff

26  with schizophrenia, possible paranoid type low back syndrome with good range of motion and

27  normal ambulation, smoker with no evidence of end-organ damage, and history of medication for

28  hypertension with good control and no evidence of end-organ damage.  *Id*.  Dr. Rush opined

1    Plaintiff was not limited in lifting carrying, pushing, pulling, walking, standing, or sitting.  *Id*.

2    Dr. Rush noted Plaintiff could do routine bending, crouching, stooping, could walk on uneven

3    terrain, and claim ladders.  *Id*.  The ALJ found Dr. Rush's report was consistent with the findings

4    in the overall record, and the Plaintiff's complaints of mental symptoms supported a need for 10-

5    minute breaks every hour.  *Id*.[3]

6         The ALJ also considered the report of James P. Murphy, Ph.D.  *Id*. at 27-28.  Dr. Murphy

7    found Plaintiff's attention was within normal limits, appeared to be fully oriented, and his

8    memory was intact, but severely impaired.  *Id*. at 28.  Dr. Murphy noted Plaintiff's eye contact

9    was appropriate, his attitude was cooperative and while his mood could be described as irritable,

10   his emotional expression was not congruent with his reported mood.  *Id*.  Dr. Murphy reported

11   Plaintiff's thoughts were clear, coherent, and well organized he had no difficulty handling ideas,

12   and he could identify basic similarities, differences, and absurdities.  *Id*.  Dr. Murphy found

13   Plaintiff's general knowledge was less than adequate, but Plaintiff appeared to give a less than

14   honest attempt in answering the questions.  *Id*.  Dr. Murphy opined Plaintiff would not have

15   difficulty in any work-related mental tasks.  *Id*.  The ALJ noted Dr. Murphy did not have the

16   opportunity to review the entire record as to Plaintiff's "continued mental symptoms despite

17   medication and counseling."  *Id*.  Therefore, the ALJ found that additional limits on contact with

18   others as supported by Plaintiff's reported mental symptoms were required.  *Id*.  Specifically, the

19   ALJ held 10-minute breaks for Plaintiff every two hours would be helpful due to his mental and

20   physical symptoms.  *Id*.

21        The ALJ considered the reports of state agency psychological consultants R. Paxton, MD.,

22   and Yamira Olaya, MD.  *Id*.  The consultants concluded that Plaintiff's mental impairments

23   caused a mild restriction in his understanding, remembering, and applying information, and

24

25        [3] The ALJ's assessment "Plaintiff's complaints of mental symptoms supported a need for
     10-minute breaks every hour" is inconsistent with the ALJ's ultimate RFC.  AR at 24, 27.

26   Generally, "Courts have excused inconsistent statements by ALJs as mere scrivener's errors "if
     the intent of the ALJ is apparent from the record."  *McKenzie v. Kijakazi*, No. 1:20-cv-00327-

27   JLT, 2021 WL 4279015, at *15 (E.D. Cal. Sept. 21, 2021).  Here, it is apparent from the record
     that the ALJ intended the RFC to include 10-minute breaks every *two* hours, as reflected in the

28   hypothetical presented to the VE (AR 73) and as memorialized in the RFC.

1    adapting or managing oneself, and a moderate restriction in interacting with others and

2    concentration, persistence, and pace. *Id*. The consultants also opined Plaintiff could perform

3    nonpublic work with simple level tasks. *Id*. The ALJ found the opinions were consistent with the

4    overall record. *Id*. However, the ALJ found additional restrictions on contact with coworkers

5    and supervisors are supported by Plaintiff's reported symptoms. *Id*.

6          The ALJ determined that Plaintiff had no past relevant work (step four), but given his age,

7    education, work experience, and RFC, he could perform a significant number of other jobs in the

8    national economy, including housekeeping cleaner, merchandise marker, and routing clerk (step

9    five). *Id*. at 29.

10         On May 27, 2020, the Appeals Council denied Plaintiff's request for review, making the

11   ALJ's decision the final decision of the Commissioner. *Id*. at 36-41. Plaintiff filed this action on

12   March 11, 2021, seeking judicial review of the denial of his application for benefits. (Doc. 1).

13   The Commissioner lodged the administrative record on January 28, 2022. (Doc. 12). Plaintiff

14   filed a motion for summary judgment on May 16, 2022. (Doc. 18). Defendant filed a cross-

15   motion for summary judgment and opposition on July 27, 2022. (Doc. 22). On August 11, 2022,

16   Plaintiff filed a reply. (Doc. 23).

17                          **II.     LEGAL STANDARD**

18         **A. The Disability Standard**

19         Disability Insurance Benefits and Supplemental Security Income are available for every

20   eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a). An individual

21   is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically

22   determinable physical or mental impairment …"[4] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)

23   (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). To

24   achieve uniformity in the decision-making process, the Social Security regulations set out a five-

25   step sequential evaluation process to be used in determining if an individual is disabled. *See* 20

26
          [4] A "physical or mental impairment" is one resulting from anatomical, physiological, or
27   psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory
     diagnostic techniques. 42 U.S.C. § 423(d)(3).
28

1    C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

2    Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

8    *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

9    on a claimant at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing

10   *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

11          Before making the step four determinations, the ALJ first must determine the claimant's

12   RFC.  20 C.F.R. § 416.920(e).  The RFC is the most a claimant can still do despite their

13   limitations and represents an assessment based on all relevant evidence.  20 C.F.R. §§

14   404.1545(a)(1); 416.945(a)(1)).  The RFC must consider all of the claimant's impairments,

15   including those that are not severe.  20 C.F.R. § 416.920(e); § 416.945(a)(2).  *E.g.*, *Wells v.*

16   *Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in

17   assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's

18   medically determinable impairments, whether severe or not severe.").  The RFC is not a medical

19   opinion.  20 C.F.R. § 404.1527(d)(2).  Rather, it is a legal decision that is expressly reserved to

20   the Commissioner.  20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

21   Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

22   residual functional capacity.").

23          At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform

24   other work in the national economy given the claimant's RFC, age, education, and work

25   experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  To do this, the ALJ can use

26   either the Medical-Vocational Guidelines or rely upon the testimony of a VE.  *Lounsbury v.*

27   *Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

28

1    Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining

2    credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950

3    F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

4        **B. Standard of Review**

5        Congress has provided that an individual may obtain judicial review of any final decision

6    of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

7    determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the

8    party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  A

9    court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on

10   legal error or are not supported by substantial evidence.  *Tackett v. Apfel*, 180 F.3d 1094, 1097

11   (9th Cir. 1999).

12       "Substantial evidence is relevant evidence which, considering the record as a whole, a

13   reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278

14   F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

15   1457 (9th Cir, 1995)).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v.*

16   *Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Rather, "[s]ubstantial evidence means more than a

17   scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v.*

18   *CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

19       "[A] reviewing court must consider the entire record as a whole and may not affirm

20   simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153,

21   1159 (9th Cir. 2012) (internal quotations and citations omitted).  "If the evidence 'is susceptible

22   to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*,

23   950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  Even if the

24   ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  *Stout*,

25   454 F.3d at 1055-56.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

26   nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008)

27   (quotation and citation omitted). The burden of showing that an error is not harmless "normally

28   falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396,

1    409 (2009).

2                              III.    LEGAL ISSUE

3          Plaintiff asserts the ALJ failed to include work-related limitations in the RFC consistent

4    with the nature and intensity of Plaintiff's limitations and failed to offer any reasons for

5    discounting his subjective complaints.  (Doc. 18 at 8).

6                              IV.    DISCUSSION

7          The ALJ is responsible for determining credibility,[5] resolving conflicts in medical

8    testimony, and resolving ambiguities.  *Andrews*, 53 F.3d at 1039.  A claimant's statements of pain

9    or other symptoms are not conclusive evidence of a physical or mental impairment or disability.

10   42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements

11   of symptoms alone are not enough to establish the existence of a physical or mental impairment

12   or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required

13   to believe every allegation of disabling pain or other non-exertional impairment.") (internal

14   quotation marks and citation omitted).  Determining whether a claimant's testimony regarding

15   subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis.

16   *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the

17   claimant has presented objective medical evidence of an underlying impairment which could

18   reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*,

19   504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not

20   require the claimant to show that his impairment could be expected to cause the severity of the

21   symptoms that are alleged, but only that it reasonably could have caused some degree of

22   symptoms.  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

23         If the first step is met and there is no evidence of malingering, "the ALJ must provide

24   'specific, clear and convincing reasons for' rejecting the claimant's testimony."  *Treichler v.*

25

26         [5] Social Security Ruling (SSR) 16-3p applies to disability applications heard by the
     agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to
27   emphasize that subjective symptom evaluation is not "an examination of an individual's character
     but an endeavor to "determine how symptoms limit [the] ability to perform work-related
28   activities." SSR 16-3p, 2017 WL 5180304, at *3.

                                        10

1   *Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1281).

2   *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse

3   credibility finding must be based on "clear and convincing reasons").  The ALJ must make

4   findings that support this conclusion and the findings must be sufficiently specific to allow a

5   reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds

6   and did not arbitrarily discredit the claimant's testimony.  *Moisa v. Barnhart*, 367 F.3d 882, 885

7   (9th Cir. 2004).

8         The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the

9   claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."

10   *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22,

11   2023), *F&R adopted*, 2023 WL 5109769 (E.D. Cal. Aug. 8, 2023); *see Record v. Kijakazi*, No.

12   1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's

13   decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court

14   will still defer to the ALJ's decision.") (quoting *Wilson v. Berryhill*, 757 F. App'x 595, 597 (9th

15   Cir. 2019)).  "The standard isn't whether our court is convinced, but instead, whether the ALJ's

16   rationale is clear enough that it has the power to convince."  *Smartt v. Kijakazi*, 53 F. 4th 489, 494

17   (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

18         The ALJ may consider numerous factors in weighing a claimant's credibility, including

19   "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

20   prior inconsistent statements concerning the symptoms, and other testimony by the claimant that

21   appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to

22   follow a prescribed course of treatment; and (3) the claimant's daily activities."  *Smolen*, 80 F.3d

23   at 1284.  In evaluating the credibility of symptom testimony, the ALJ must also consider the

24   factors identified in SSR 16-3P. *Id.*[6] (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.

25   1991)).  *Accord Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).  These

26

27        [6] *Smolen* cites to SSR 88-13, which has since been superseded by SSR 16-3P (available at
    2017 WL 5180304).  *See Amy E.S. v. Commissioner*, 2022 WL 92939, at *9 n.4 (D. Or. Jan. 10,
28   2022).

1    factors include:

2         (1) Daily activities; (2) The location, duration, frequency, and intensity of
          pain or other symptoms; (3) Factors that precipitate and aggravate the
3         symptoms; (4) The type, dosage, effectiveness, and side effects of any
          medication an individual takes or has taken to alleviate pain or other
4         symptoms; (5) Treatment, other than medication, an individual receives
          or has received for relief of pain or other symptoms; (6) Any measures
5         other than treatment an individual uses or has used to relieve pain or other
          symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes
6         every hour, or sleeping on a board); and (7) Any other factors concerning
          an individual's functional limitations and restrictions due to pain or other
7         symptoms.

8

9    SSR 16-3P, 2017 WL 5180304, at *7. *See* 20 C.F.R. § 404.1529(c)(3).  If the ALJ's finding is

10   supported by substantial evidence, the court may not engage in second-guessing.  *Tommasetti*,

11   533 F.3d at 1039 (citations and internal quotation marks omitted).

12        The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

13   demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir.

14   2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A

15   finding that a claimant's testimony is not credible must be sufficiently specific to allow a

16   reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible

17   grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v.*

18   *Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

19        "The fact that a claimant's testimony is not fully corroborated by the objective medical

20   findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*,

21   260 F.3d 1044, 1049 (9th Cir. 2001). *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your

22   statements about the intensity and persistence of your pain or other symptoms or about the effect

23   your symptoms have on your ability solely because the objective medical evidence does not

24   substantiate your statements."). Rather, where a claimant's symptom testimony is not fully

25   substantiated by the objective medical record, the ALJ must provide additional reasons for

26   discounting the testimony. *Burch*, 400 F.3d at 680. "The ALJ must specify what testimony is not

27   credible and identify the evidence that undermines the claimant's complaints – '[g]eneral findings

28   are insufficient.'" *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).

                                            12

1    However, the medical evidence "is still a relevant factor in determining the severity of the

2    claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

3    2001).  The Court of Appeals has distinguished testimony that is "uncorroborated" by the medical

4    evidence from testimony that is "contradicted" by the medical records, and concluded that

5    contradictions with the medical records, by themselves, are enough to meet the clear and

6    convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (quoting

7    *Carmickle*, 533 F.3d at 1161).  The Court of Appeals has also acknowledged that the ALJ is not

8    "required to believe every allegation of disabling pain, or else disability benefits would be able

9    available for the asking, a result plainly contrary to" the Social Security Act.  *Molina*, 674 F.3d at

10   1104.

11       Plaintiff argues "[t]he ALJ's findings are not supported by substantial evidence because

12   he failed to articulate a clear and convincing reason for discounting Plaintiff's mental health

13   symptoms including hallucinations, paranoia, difficulty leaving the house, panic attacks and

14   irritability."  (Doc. 18 at 9-10).

15       Plaintiff asserts the ALJ failed to explain why her conclusion there are "inconsistencies in

16   the claimant's alleged sobriety" undermines Plaintiff's mental health symptoms.  *Id*. at 10.

17   Plaintiff contends this is merely an attack on an instance of untruthfulness and is not a clear and

18   convincing reason to discount his subjective complaints, as it has nothing to do with the intensity

19   and persistence of Plaintiff's overall symptoms.  *Id*. (citing *Trevizo v. Berryhill*, 871 F.3d 664,

20   679 (9th Cir. 2017) ("…assessments of an individual's testimony by an ALJ are designed to

21   'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has

22   a medically determinable impairment that could be reasonably expected to produce those

23   symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent

24   truthfulness.")).

25       Next, Plaintiff argues the ALJ simply proceeded to summarize Plaintiff's treatment

26   history and weighed the medical opinions.  *Id*.  Plaintiff claims the ALJ failed to state a clear and

27   convincing reason for rejecting Plaintiff's testimony.  *Id*.  (citing *Lambert v. Saul*, 980 F.3d 1266,

28   1278 (9th Cir. 2020) (quoting *Brown-Hunter*, 806 F.3d at 494) (explaining that a "detailed

1    overview of …medical history" is insufficient)).  Plaintiff asserts the ALJ's summary of

2    Plaintiff's treatment history failed to explain "why any of these facts contradict Plaintiff's alleged

3    symptoms and limitations."  *Id*.  Plaintiff argues the ALJ's concession that the opinions it relied

4    upon "did not properly account for Plaintiff's subjective symptoms undermines Defendant's

5    reliance on their opinions as sufficient support for the RFC."  (Doc. 23 at 2).  Plaintiff submits

6    that "the ALJ's ultimate conclusion at Step Five, rendered based upon the unsupported RFC

7    determination is unsupported by substantial evidence."  (Doc. 18 at 11).

8         In contrast, Defendant argues the ALJ properly considered the consistency of Plaintiff's

9    subjective statements and provided legally sufficient reasons for her RFC determination.  *See*

10   (Doc. 22 at 10-16).

11        Here, the ALJ summarized Plaintiff's testimony symptoms as follows:

12   "The complainant complains of back pain …" (AR 23)

13
     "The claimant claimed that he hears voices four to five times a week.  He experiences
14   visual hallucinations, panic attacks that can last up to 30 minutes, and difficulty sleeping
     through the night.  He said he takes his medication because it is part of his supportive
15   living  requirements.  He said he hears voices, and he has been sober from illegal
     substances except for a relapse six months prior.
16

17   The claimant alleged that he has pain in his hands and back that make activities difficult.
     He said he suffered a head injury 18 months ago when he was hit in the head with a pipe.
18   He said he has had headaches since then.

19   The claimant testified that he lives in an apartment in a supportive housing facility with
     one roommate.  He cleans his own room and does his own laundry.  He grocery shops
20   once a week.  He said it is difficult to push a shopping cart, be around people, or stand in
     line.  He tries to go to the store later. And he avoids public situations.  Staff at his living
21   facility assist with transportation."   (AR 25)

22

23   The ALJ acknowledged and engaged in the two-part analysis under *Treichler* (*supra*).  (AR 24-

24   25).  The ALJ found that Plaintiff's impairments could reasonably be expected to cause the

25   alleged symptoms, but separately noted: "the claimant's statements concerning the intensity,

26   persistence and limiting effects of these symptoms are not entirely consistent with the medical

27   evidence and other evidence in the record for the reasons explained in this decision."[7]

28        [7] This statement is nearly identical to a statement the Court of Appeals found to be

14

1    In the subsequent paragraph, the ALJ elaborated that while Plaintiff claimed to suffer

2    from "debilitating physical issues," medical records showed Plaintiff sought only minimal

3    treatment for physical impairments.  Further, the ALJ acknowledged Plaintiff's recurring physical

4    activities of riding a bicycle and being able to walk a mile.  Similarly, the ALJ recognized that

5    Plaintiff expressed "doing well" after spending 14 hours loading furniture onto a truck

6    approximately nine months prior to the hearing.  And the ALJ pointed out that there were

7    "inconsistencies in the claimant's alleged sobriety." *Id*. at 25.  Specifically, the ALJ noted in

8    June 2017, Plaintiff said he had not used meth since 2013, but three months prior, he reported he

9    had last used a few months prior. *Id*.

10    In sum, all of the bases for the ALJ's conclusion that Plaintiff's testimony was "not

11    entirely consistent" with the other record evidence relate to Plaintiff's complaints of chronic back

12    pain.  For instance, the ALJ permissibly considered Plaintiff's testimony of daily riding a bicycle

13    and engaging in labor-intensive manual labor (unloading furniture from a truck) to be inconsistent

14    with his testimony regarding pain symptoms.  (AR 25).  However, the fact that Plaintiff regularly

15    rides a bicycle and occasionally engages in manual labor does not contradict or otherwise

16    discredit or undermine his claimed psychiatric symptoms (*i.e.*, panic attacks, hearing voices, etc.).

17    Thus, the ALJ's reasons for discounting Plaintiff's testimony about *pain* symptoms does not

18    constitute clear and convincing reasons for similarly discounting Plaintiff's testimony about his

19    *psychiatric* symptoms. *See Rostocil v. Colvin*, No. 3:12-cv-01526-SI, 2014 WL 1333983, at *8

20    (D. Or. Apr. 2, 2014) ("Evidence of improvement in Ms. Rostocil's psychiatric symptoms alone

21    is not substantial evidence that her physical pain symptoms are less severe than she describes.").

22    The ALJ comprehensively summarized the medical evidence relevant to Plaintiff's

23    psychiatric conditions and symptoms.  However, "[u]nder *Brown-Hunter*, 'the observations an

24    ALJ makes as part of the summary of the medical record are *not* sufficient to establish clear and

25    convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, No. 1:15-cv-01110-

26    SKO, 2016 WL 4138577, at *13 (E.D. Cal. Aug. 3, 2016) (emphasis in original) (quoting *Brown-*

27

28    "boilerplate" routinely included in ALJ decisions. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

15

1   *Hunter*, 806 F.3d at 494).  Here, the ALJ discussed the relevant medical evidence but "failed to

2   link" Plaintiff's testimony to the medical record and explain how that evidence contradicted his

3   testimony.  *Holcomb v. Saul*, 832 Fed. Appx. 505, 506 (9th Cir. 2020).  The ALJ did not address

4   Plaintiff's psychiatric symptom testimony while discussing the medical evidence.  *See* AR at 25-

5   29.  For example, the ALJ failed to identify medical evidence conflicting with Plaintiff's

6   testimony that he experienced panic attacks that could last up to 30 minutes every day.  *Id*. at 25-

7   29, 62-64.  Instead, it appears, the ALJ reiterated the medical findings from the administrative

8   record and concluded: "additional limits on contact with others are supported by the claimant's

9   reported mental symptoms."  *Id*. at 29.

10          Defendant's argument that even if the ALJ presented his rationale with "less than ideal

11   clarity" the Court must affirm if the ALJ's path "may be reasonably discerned" is unpersuasive.

12   (Doc. 22 at 15) (citing *Molina*, 674 F.3d at 1121).  The ALJ's rationale must be clear enough that

13   it has the power to convince.  *Smartt*, 53 F. at 494.  While the ALJ certainly provided a "detailed

14   summary" of Plaintiff's medical records, the summary alone does not constitute clear and

15   convincing reasons sufficient to uphold the ALJ's discrediting of Plaintiff's psychiatric symptom

16   testimony.  *See McKenzie v. Kijakazi*, No. 1:20-cv-00327-JLT, 2021 WL 4279015, at *12 (E.D.

17   Cal. Sep. 21, 2021) (remanding for failure to link the medical record to the plaintiff's subjective

18   statements concerning her limitations.)

19           Defendant's claim "[t]he ALJ repeatedly noted inconsistencies between Plaintiff's

20   alleged symptoms and his capacity for daily activities" also fails.  (Doc. 22 at 13) (citing AR 24-

21   25, 27).  An ALJ is "permitted to consider daily living activities" in addressing a Plaintiff's

22   subjective statements.  *Burch*, 400 F.3d at 681.  Daily activities "form the basis for an adverse

23   credibility determination" when: (1) the daily activities contradict the claimant's other testimony

24   or (2) the daily activities meet the threshold for transferable works skills.  *Orn*, 495 F.3d at 639;

25   *see Molina*, 674 F.3d at 1112 (factors to consider in evaluating a claimant's statements include

26   "whether the claimant engages in daily activities inconsistent with the alleged symptoms" and

27   whether "the claimant reports participation in everyday activities indicating capacities that are

28   transferable to a work setting").

16

1    The ALJ identified Plaintiff does laundry, shops, rides a bicycle daily, did housework,

2    used public transportation, talked on the phone, attended church, and was able to handle his

3    finances.  (AR 24-25, 26-27).  The ALJ failed to make any determination that these activities

4    conflicted with his subjective testimony.  *See id.*  The ALJ did not make any findings on how or

5    whether these limited activities could transfer to a work setting.  *See Blau v. Asture*, 263 Fed.

6    App'x 635, 637 (9th Cir. 2008) ("Daily household chores…are not activities that are easily

7    transferable to a work environment."); *see also Lewis*, 236 F.3d at 517 (limited activities do not

8    constitute convincing evidence that the claimant can function regularly in a work setting).

9    Because the ALJ failed to set forth clear and convincing reasons supported by substantial

10   evidence, and because the Court finds the ALJ's credibility assessment was consequential to her

11   non-disability determination, the ALJ's credibility determination cannot be upheld.  An error is

12   harmless where it is "inconsequential to the [ALJ's] ultimate [non-disability] determination."

13   *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted).

14   Here, the ALJ's error is not harmless because her RFC determination did not sufficiently account

15   for and reconcile Plaintiff's testimony.  *Brown-Hunter*, 806 F.3d at 494 ("Because the ALJ failed

16   to identify the testimony she found not credible, she did not link that testimony to the particular

17   parts of the record supporting her non-credibility determination. This was [harmful] legal error.").

18                                 **V.      REMAND**

19   The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g)

20   or to order immediate payment of benefits is within the discretion of the district court.  *Harman v.*

21   *Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an

22   administrative agency determination, the proper course is to remand to the agency for additional

23   investigation or explanation.  *Moisa*, 367 F.3d at 886 (citing *INS v. Ventura*, 537 U.S. 12, 16

24   (2002)).  Generally, an award of benefits is directed when:

25

26      (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2)
        there are no outstanding issues that must be resolved before a determination of disability
27      can be made, and (3) it is clear from the record that the ALJ would be required to find the
        claimant disabled were such evidence credited.

28

                                        17

1    *Smolen*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose

2    would be served by further administrative proceedings, or where the record is fully developed.

3    *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1998).

4         Here, the ALJ committed legal error that was not harmless by failing to provide clear and

5    convincing reasons for discrediting Plaintiff's subjective psychiatric symptom testimony.

6    Because this error can be remedied on remand, further administrative proceedings are warranted.

7    *See Treichler*, 775 F.3d 1090 at 1105 ("[T]he record raises crucial question as to the extent of [the

8    plaintiff's] impairment given inconsistencies between his testimony and the medical evidence in

9    the record.  These are exactly the sort of issues that should be remanded to the agency for further

10   proceedings.").

**VI.    CONCLUSION AND ORDER**

12        Based on the foregoing, the Court finds that the ALJ's decision is not supported by

13   substantial evidence.  Accordingly, IT IS HEREBY ORDERED:

14        1.  Plaintiff's motion for summary judgment (Doc. 18) is GRANTED;

15        2.  Defendant's cross-motion for summary judgment is DENIED;

16        3.  The ALJ's decision is VACATED, and this matter is REMANDED to the ALJ for

17            further proceedings consistent with this order; and

18        4.  The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Trenton

19            Lydell Gabriel and against Defendant Kilolo Kijakazi, Acting Commissioner of

20            Social Security.

21   IT IS SO ORDERED.

22        Dated:   **August 31, 2023**                          _____

23                                                        UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28